## FERNANDEZ et al. v. LEWIS.

### No. 3313.

Court of Civil Appeals of Texas. El Paso.
March 5, 1936.

Rehearing Denied March 26, 1936.

Templeton, Brooks, Napier & Brown, of San Antonio, and West & Hightower and Galbraith & Goodrich, all of Brownsville, for appellants.

Abney & Whitelaw, of Brownsville, for appellee.

HIGGINS, Justice.

This is a suit to recover damages brought by D. A. Lewis against Miss Anna Maria Fernandez, her mother, Mrs. S. E. Bayless, and stepfather, S. E. Bayless. Mrs. Bayless and husband married subsequent to June 2, 1934.

The plaintiff alleged that on the night of June 2, 1934, he was driving his automobile on the highway in a southeasterly direction going from San Benito to Brownsville when it collided with another automobile then and there driven and owned by Miss Fernandez, traveling in a northeasterly direction. Various acts of negligence on the part of Miss Fernandez causing the collision were alleged. At the time of the collision Mrs. Bayless was a widow; Miss Fernandez was a minor and a member of her mother's family. Mrs. Bayless aided and abetted Miss Fernandez in the use and operation of the car upon the occasion in question and authorized Miss Fernandez to use and operate same. The automobile was procured by Mrs. Bayless for the pleasure of her daughter then a minor and for use by other members of the family. It was further alleged Miss Fernandez was a careless, reckless, and negligent driver which was known to Mrs. Bayless and she was negligent in permitting her daughter to drive the automobile.

Plaintiff's wife was riding in his car when the accident occurred and sustained personal injuries.

Judgment was sought against the daughter and her mother for damages to plaintiff's car and the damages sustained as the result of Mrs. Lewis' injuries.

Upon special issues submitted it was found that "the driver of the automobile of the defendant, Anna Maria Fernandez, at the time and on the occasion in question" was guilty of various acts of negligence proximately causing the collision. The issues of unavoidable accident and contributory negligence were found in favor of plaintiff.

The damages to plaintiff's car and for Mrs. Lewis' injuries were assessed at $12,885, for which amount judgment was rendered against Miss Fernandez and her mother.

In the state of the plaintiff's pleadings and the undisputed evidence there are a number of errors which necessitate reversal, but those errors only will be discussed which call for reversal and rendition. •

The undisputed evidence shows Miss Fernandez was not driving the car upon the occasion in question, but it was being driven by Raymond Mickle.

Miss Fernandez, called by plaintiff, testified:

"I live in Brownsville with my mother in the family home, have lived there most all my life. On the night of June 2, 1934, I went ·up to a dance in my car with Raymond Mickle and Eugene Miche, at San Benito. We left Brownsville about nine o'clock or a little before, and stopped enroute at Olmito, where Mickle put some gas in the car which he paid for.

"I saw a car ahead of us, I guess maybe less than half a block. I didn't say anything when I saw that car, nothing was said. The only thing Mickle could do was to put on his brakes to keep from hitting it. He slammed on his brakes with all his strength, my best judgment is he put the brakes on hard. Then Mr. Lewis, we saw him coming maybe a half a block or a little bit more, and all of a sudden, before we knew it, he hit us.

"Of course, I was very much excited about this. I received some very painful injuries.

"I have known Mickle about five years, have gone with him frequently, we were very good friends. This is not the first time he and I had been together in this car. It was not the first time he and I had gone to dances up the valley to different places. I know Miche well; he was a member of the young crowd we run around with together, and made up parties and dances together. We sometimes used the car we were in that night to go to these dances, and sometimes would use another car. My mother had a car and my little sister had one, we can use either one of them, I can take either one I see fit.

"I think I got this Dodge coupe (the car in question) in 1931. I had been driving a car since I was about sixteen—about five years. Before I got the Dodge, I had two Chevrolets. They may have had a fender smashed on them, but they were not in a wreck, I don't recall having been in a collision with both of those Chevrolets when I was driving. I was not in a wreck with the big Cadillac when I was driving it or while Mickle was driving it. This Dodge coupe was not involved in several minor collisions, denting in fenders and things like that, before this collision (the one in question) while I was driving it,—it was once when my little sister was driving it."

Asked if she used her sister's car, the Cadillac car, or her mother's car to go to dances in, she said: "I don't know whether we used them to go to dances, but we used them to ride around town. Don't recall using my sister's car or my mother's car to go to a dance in."

Recalled by plaintiff, she testified:

"Q. Before you left you told your mother where you were going? A. Yes, sir.

"Q. And she understood where you were going? A. Yes, sir.

"Q. And she gave her consent? A. At first she didn't want me to go because I had just driven her back from San Antonio, but Mr. Mickle said he would drive and she said that was all right.

"Q. She then consented for you to go? A. Yes, sir.

"Q. With reference to this San Antonio trip, who made that trip? A. My mother and I.

"Q. You went up in this Dodge coupe? A. Yes, sir."

Raymond Mickle called by defendants testified:

"I have been driving about 11 years. The only automobile accident I ever had was on June 2nd, the accident concerned in this case.

"I left Olmito about five o'clock. I took my father's car and went in town for the purpose of going to a dance, and went up and saw Eugene Miche and asked him if he would go to the dance as my guest and we would get some girls. He consented to go and I knew Miss Fernandez had returned from San Antonio, and I went up to see if she would go to the dance with me, and I had parked my car about a block away from her house and as we came down stairs I saw her car in front and requested that she let me have the use of her car, and we drove out and picked up Eugene Miche at the Jitney Jungles store. Asked why he didn't use his own car, he said: It was an old car and didn't look very good and had a built in truck with it, and there was not as much room in it—and so we drove from there out to my home where I put some gas in the car. I got hold of Miche at the Jitney Jungles store where he worked. When we stopped at Olmito and put some gas in the car, Miss Fernandez, Eugene Miche, and myself, were occupying the car. I was driving. I had seen the car ahead coming toward me, when I first saw that car it looked like it was thirty or forty feet ahead of me and the next second it struck.

"Q. Now, did Mrs. Bayless give you any consent to drive the car? A. You mean that night?

"Q. Yes. A. Mrs. Bayless never gave me her consent.

"Q. Who consented for you to drive that car? A. Miss Fernandez.

"Q. Anna Maria Fernandez? A. Yes, sir.

"This was not the first time I had driven that car, had driven it many times. I went around with Miss Fernandez and had been a friend of hers over a period of some five years. She and I many times- theretofore had gone to dances and rode up and down the Valley in that car with other couples—usually we had some one with us, but we have gone by ourselves. Sometimes she would drive and sometimes I would drive. Sometimes I would meet her here in town and we would ride up and down the streets. Sometimes I would be having a party and would borrow the car from her, and take my guests to the party. I have used the car without her being in it.

"Q. You at no time during the entire evening relinquished control of the car until after the accident? A. No, sir.

"Q. You continued to drive the car right along. A. Yes, sir."

Eugene Miche testified that Raymond Mickle came by the store where he was working and asked him if he would like to go to a dance as soon as he got off; that he worked at the store until about 9 o'clock and then started to San Benito with Raymond Mickle and Anna Maria Fernandez in Anna Maria's car; that Raymond Mickle was driving the car; and that he continued to drive the car.

The foregoing testimony was uncontradicted, nor is it impeached in any manner.

Appellee seeks to sustain the judgment against Miss Fernandez because the evidence shows Miss Fernandez and Raymond Mickle, at the time of the accident, were engaged in a joint enterprise and Miss Fernandez had an equal right to control and direct the operation of her car.

This theory ignores the obvious fact that it is unsupported by the pleadings, but aside from such consideration it is settled that while a minor is liable in damages for his personal tortious act he is not liable for a tort committed by his agent or employee. 14 R.C.L. 260, § 36; Cooley on Torts (2d Ed.) p. 128; Ann.Cases, 1916A, 959, note.

It follows Miss Fernandez is not liable for the negligence of Mickle in causing the collision.

There is no evidence whatever Miss Fernandez was a careless, reckless, and negligent driver, as alleged. So, if she had been driving the car, her mother could not be held liable upon the theory that she was negligent in letting her daughter (then twenty years old) drive.

Appellee seeks to sustain the judgment against the mother under the so-called "family purpose car doctrine." Such doctrine as recognized and applied in some jurisdictions has been definitely rejected in this state by the ruling in Trice v. Bridgewater (Tex.Com.App.) 81 S.W.(2d) 63, 64, 100 A.L.R. 1014, where it was held:

"That the mere ownership of an automobile purchased by a father for the use and pleasure of himself and family does not render him liable in damages to a third person who may be injured by reason of the negligence of his minor son while operating the automobile on the public highway in pursuit of the son's own purpose and pleasure, notwithstanding the son may have been using the car with the permission of the father. * * *

"The question here decided briefly is that a minor son, who is a competent and skillful driver, is not engaged in a 'family purpose' or a business of his father when driving his father's automobile on a mission involving solely his own pleasure and purposes."

The car in this case was not owned by Mrs. Bayless, but by her daughter. The petition alleges it was owned by Miss Fernandez. It was one of three cars in the family. It does not appear Mrs. Bayless even knew the car was going to be used by Mickle and her daughter in going to the dance. And the undisputed evidence shows it was being used on a mission involving only the pleasure and purpose of the daughter and her companions in going to a dance at San Benito. Under the case cited, no liability is shown on the part of Mrs. Bayless.

Reversed and rendered.