Wayland B. FOWLER et al., Appellants,

v.

Gary Michael PEDLAR et al., Appellees.

No. 16124.

Court of Civil Appeals of Texas,
Houston (1st Dist.).

May 24, 1973.

Rehearing Denied July 19, 1973.

Brown, Kronzer, Abraham, Watkins & Steely, John M. O'Quinn, Houston, for appellant; James H. Campbell, Houston, of counsel.

Talbert, Giessel & Stone, Alice Giessel, Houston, for appellees.

COLEMAN, Chief Justice.

This is an appeal from a judgment awarding damages for injuries suffered by a minor in an automobile-pedestrian collision. The defendant stipulated liability and medical expenses. The trial court disregarded the jury finding as to damages for future loss of earning capacity and entered judgment for the damage found by the jury for medical expense, physical pain and mental anguish. The plaintiff appeals.

The trial court is authorized to disregard the jury verdict only if it is supported by no evidence of probative value. In evaluating a "no evidence" point the ev-

idence must be viewed in the light most favorable to the verdict.

Wayland Fowler was struck by an automobile driven by Gary Pedlar as he was playing with a group of children on a vacant lot near his home. Among his injuries was a badly broken right femur. The treating surgeon performed an open reduction operation and installed a Kirschner rod the entire length of the marrow canal of the right femur. A large calcium deposit formed around the head of the Kirschner rod at the right hip joint. Subsequent to the removal of the cast Fowler was examined by an orthopedic surgeon who testified at the trial. After relating the details of his examination, he testified that scar tissue formed around the area of the fracture and the surgery would be calculated to cause pain and impair motion permanently in the right leg. His diagnosis was that Fowler had bursitis of the right hip, primarily as a result of the calcium deposits; that he had degenerative discs at L–4, L–5 and L–5, S–1; and that he had a painful right sciatic nerve. He attributed the nerve pain and back problem to the original injuries. He testified that Fowler would probably have some permanent disability in relation to his right thigh and right hip; that a great amount of his trouble was caused by the bursitis and calcium deposit around the upper end of the nail; that bursitis can cause very severe pain; that the rod could be removed and the calcium taken out, but he could not say how much trouble he would have if that was done. He testified that in any event he would have some amount of disability because of the disturbance to the anatomy of the bone and nearby muscles. He also testified that the amount of disability he would suffer would depend on "what he is going to do; so it depends on the livelihood he is going to have, how he is going to make a living, how active he wants to be, how much he wants to strain that area."

There was testimony that Fowler had suffered pain and would continue to suffer pain from time to time; and that such pain usually followed long standing or hard physical activity.

At the time Fowler sustained his injury, December 22, 1968, he was nineteen years of age and a college student. During the summer of 1969 he had worked for Southern Microfilm at $2.00 per hour. During the summer of 1970 he worked for three or four weeks for Austin Stamp & Stencil Company for $1.60 per hour. He had never held full time employment. In May of 1970 he quit school and went to work for Humble Oil Company at $2.50 per hour. His work involved the printing and microfilming of seismic data. He has no trade, profession, or special skills as a worker, other than those acquired during his short work life.

In McIver v. Gloria, 140 Tex. 566, 169 S.W.2d 710 (1943), the court said:

". . . In a personal injury suit the amount which the plaintiff might have earned in the future is always uncertain, and must be left largely to the sound judgment and discretion of the jury. However, the verdict must be based on something more than mere conjecture. It must be an intelligent judgment based upon such facts as are available. Even where the injury is of such a serious and permanent nature that loss of earning capacity is the necessary result, proof is required to show the extent and amount of the damages. . . . No general rule can be laid down, except that each case must be judged upon its peculiar facts, and the damages proved with that degree of certainty of which the case is susceptible. . . . Under this rule the required certainty of the proof will necessarily vary. Where plaintiff is a child, who has never earned any money, the jury must determine the value of its lost earning capacity altogether from

their common knowledge and sense of justice. . . ."

In Bonney v. San Antonio Transit Company, 160 Tex. 11, 325 S.W.2d 117 (1959), the court said:

". . . The rule in this jurisdiction is that where a plaintiff seeks damages for impairment of earning capacity, he must prove the amount of such damages with the degree of certainty to which it is susceptible. . . . This rule requires that a plaintiff introduce evidence from which a jury may reasonably measure in monetary terms his earning capacity prior to injury, unless some reason appears for his failure to do so. The reason for this rule is that although the amount of damages resulting from impairment of a plaintiff's earning capacity must be left largely to the sound judgment and discretion of the jury, nevertheless the jury should not be left to mere conjecture where facts appear to be available upon which the jury could base an intelligent answer. . . ."

■ Here appellant presented all of the facts relative to his prior earning capacity available. It is clear that at the time of his injury he had not reached his potential earning capacity. There was sufficient evidence from which the jury could determine that he had suffered injuries resulting in impairment of his ability to do work involving standing for long periods of time or hard manual labor. There is evidence that he had no special training or abilities which would make it improbable that he would engage in manual labor. There is no evidence establishing the wage rates currently being received by other persons holding jobs requiring manual labor. However, it is a matter of common knowledge that $2.50 per hour is a relatively low rate. Since appellant was a student at the time of his injury, and had not determined the field in which he expected to earn his living, evidence of wages paid in various occupations would have been of slight assistance to the jury. This is a case where the amount of lost earning capacity must be determined by the jury largely "from their common knowledge and sense of justice." The trial court erred in disregarding the finding of the jury and in failing to enter judgment thereon. King v. Skelly, 452 S.W.2d 691 (Tex.1970); H. J. Heinz Company v. Ashley, 291 S.W.2d 427 (Tex. Civ.App.—Galveston 1956); Consolidated Casualty Insurance Company v. Smith, 309 S.W.2d 80 (Tex.Civ.App.—Houston 1958, err. ref. n. r. e.).

In the case last cited Chief Justice Bell of this court pointed out:

"In determining diminished earning capacity, you do not consider alone the ability of the workman to do the immediate type of work he is on. He may not always be on this type of work. He must compete in the mart of labor for jobs of varying types. Some of them are very advantageous but require hard manual labor. A jury has a right to consider this factor in the light of all the testimony, in determining lessened earning capacity. . . ."

■ Appellee contends by a cross-point that the verdict is excessive. A man nineteen years of age has a life expectancy in excess of 55 years. Appellant has suffered some permanent injury. The amount of damage to be allowed for loss of future earning capacity is largely within "the sound judgment and discretion of the jury." We cannot say that the award of $13,000.00 in this case is so large as to indicate that it was the result of passion, prejudice, sympathy or other improper motive. Nor do we find the verdict contrary to the great weight and preponderance of the evidence.

The judgment of the trial court is reformed by deleting therefrom the paragraph wherein the court sustained the defendant's motion to eliminate from the judgment the damages allowed by the jury

for loss of earning capacity in the future and by increasing the damages awarded to Wayland B. Fowler from the sum of $7,433.00 to the sum of $20,433.00.

The judgment as reformed is affirmed.